UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                                      :

RAYMOND RUSSELL, JR.,                   :

                                          Plaintiff,   :

                                                      :          18-CV-8543 (VSB)

                        - against -                 :

                                                      :          **OPINION & ORDER**

THE STATE OF NEW YORK and         :
THE STATE OF NEW YORK             :
DEPARTMENT OF CORRECTION &   :
COMMUNITY SUPERVISION,          :
                                                      :
                                        Defendants.  :
                                                      :
------------------------------------------------------X

Appearances:

Andrew Rozynski
Eisenberg and Baum LLP
New York, New York
*Counsel for Plaintiff*

Rebecca Lynn Johannesen
Bradley Gordon Wilson
New York State Office of the Attorney General
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Raymond Russell, Jr. brings this action against Defendants State of New York (the "State") and State of New York Department of Correction and Community Supervision ("DOCCS"), alleging claims under Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131, *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, among other statutes, for Defendants' alleged refusal to accommodate Plaintiff's needs as a deaf individual while he was serving his parole. Before me is Defendants' motion to dismiss the

majority of Plaintiff's claims on the ground that they are barred by the Eleventh Amendment of the United States Constitution. Because I find that (1) Congress has not abrogated Defendants' sovereign immunity with respect to Plaintiff's ADA claims, and (2) the State is not a proper party to Plaintiff's Rehabilitation Act claims, Defendants' partial motion to dismiss is GRANTED.

I. **Background**[1]

Plaintiff is a profoundly deaf individual who communicates primarily in American Sign Language ("ASL"). (Compl. ¶ 1.) He has limited proficiency in English and cannot effectively communicate by reading lips. (*Id.* ¶ 2.) On October 26, 2012, Plaintiff was released from police custody and placed on parole until October 26, 2017. (*Id.* ¶ 1.) Defendant DOCCS is the department of Defendant State responsible for the care, confinement, and rehabilitation of inmates. (*Id.* ¶ 1.)

During Plaintiff's parole, Plaintiff was repeatedly denied the assistance of an ASL interpreter when he met with his parole officers, despite his "clear inability to communicate effectively without one." (*Id.* ¶ 3.) Plaintiff made multiple requests for an interpreter; nevertheless, he was not provided with an interpreter for any of his meetings with parole officers during the entire length of his parole. (*Id.* ¶¶ 2, 8.) When Plaintiff would request an interpreter, his parole officers would either ignore his requests or instruct Plaintiff to write his thoughts down in order to communicate. (*Id.* ¶ 2.) Because of Plaintiff's inability to effectively communicate without the assistance of a qualified ASL interpreter, Plaintiff "did not [understand] the details of his parole, the limitations on his behavior imposed by his parole, and

---

[1] The following facts are taken from the Complaint ("Compl."). (Doc. 1.) My reference to the factual allegations should not be construed as a finding as to their veracity, and I make no such findings.

the length of his parole." (*Id.* ¶¶ 13–14.) Plaintiff was also "unable to understand and participate in the rehabilitation services offered by Defendants." (*Id.* ¶ 15.) When officers would make home visits, they would bang on Plaintiff's door but Plaintiff would be unable to hear them. (*Id.* ¶ 19.) On one occasion when Plaintiff was slow to open the door upon the officers' arrival, they "informed him that he could have been arrested if he had not opened the door." (*Id.* ¶ 20.) As a result of Defendants' failure to accommodate Plaintiff's disability, Plaintiff suffered humiliation, anger, frustration, and anxiety. (*Id.* ¶ 18.)

## II.     Procedural History

Plaintiff filed his Complaint against the State and DOCCS on September 19, 2018, alleging claims under Title II of the ADA, 42 U.S.C. § 12131, *et seq.*; § 504 of the Rehabilitation Act, 29 U.S.C. § 794; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.*, for Defendants' refusal to accommodate his needs as a deaf individual, and seeking monetary, injunctive, and declaratory relief. On November 28, 2018, Defendants moved for partial dismissal of the action, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docs. 16–17.) Plaintiff submitted his opposition to the motion on December 12, 2018, (Doc. 20), and Defendants filed their reply on December 19, 2018, (Doc. 21).

## III.    Legal Standards

### A.     *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed R. Civ. P. 12(b)(1). If challenged, a plaintiff is required to show that subject matter jurisdiction exists by a preponderance of the

3

evidence, *Makarova*, 201 F.3d at 113, and in analyzing such a challenge, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see also Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013) ("The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). However, "jurisdiction must be shown affirmatively." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

      **B.**    *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*

4

*v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*; *see also Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (courts are "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions'" (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002))).

IV. **Discussion**

Defendants contend that Plaintiff's ADA claims, and his Rehabilitation Act claims against the State, should be dismissed as barred by the Eleventh Amendment. (Defs.' Br. 3–5.)[2] In other words, Defendants argue that I do not have subject matter jurisdiction over those claims. I agree.[3]

A. *Applicable Law*

"The Eleventh Amendment bars federal jurisdiction over suits against nonconsenting States, and so whether or not sovereign immunity bars a claim is properly decided under a Rule 12(b)(1) motion." *Goonewardena v. New York*, 475 F. Supp. 2d 310, 321 (S.D.N.Y. 2007) (internal quotation marks omitted). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority

---

[2] "Defs.' Br." refers to the Memorandum of Law in Support of Defendants' Partial Motion to Dismiss, filed November 28, 2018. (Doc. 17.)

[3] Defendants also contend that Plaintiff's NYSHRL and NYCHRL claims are barred by the Eleventh Amendment. (*See* Defs.' Br. 5–6.) In his opposition papers, Plaintiff agreed to dismiss his state law claims. (*See* Pl.'s Opp'n 5 n.3.) ("Pl.'s Opp'n" refers to the Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss, filed December 12, 2018. (Doc. 20.).)

under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (citation omitted). DOCCS qualifies as an instrumentality of the state, which is ordinarily immune from suit. *See Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 594 (S.D.N.Y. 2010) (citing *Lyerly v. Phillips*, No. 10-CV-3904, 2005 WL1802972, at *3 (S.D.N.Y. July 29, 2005)).[4]

### B. *Application*

#### 1. ADA Claims

Defendants first argue that the Eleventh Amendment bars Plaintiff's ADA claims in their entirety. (Defs.' Br. 3–5.) The parties agree that Defendants have not waived their Eleventh Amendment immunity with respect to ADA claims; rather, Plaintiff argues that Congress has abrogated that immunity. (*Id.* at 3; Pl.'s Opp'n 3.)

Plaintiff contends that Defendants have unlawfully discriminated against him on the basis of his disability in violation of Title II of the ADA, 42 U.S.C. § 12131, *et seq.* (*See* Compl. ¶ 4.) In *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, the Second Circuit established that a plaintiff may only bring Title II claims for monetary damages against a state where he or she alleges "that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability." 280 F.3d 98, 111 (2d Cir. 2001). The *Garcia* court explained that "[g]overnment actions based on discriminatory animus or ill will towards the disabled are generally the same actions that are proscribed by the Fourteenth Amendment," and determined

---

[4] Many of the cases cited herein refer to the New York State Department of Correctional Services ("DOCS"), which merged with the New York State Division of Parole to form DOCCS in 2011. *See* Memorandum from Andrea W. Evans, Parole Bd. Chairwoman (Apr. 1, 2011), *available at* http://www.doccs.ny.gov/NewsRoom/DCCS.pdf (last visited Sept. 30, 2019).

6

that Congress's authority under § 5 to abrogate the states' Eleventh Amendment immunity extended no further. *Id.* at 111–12.

However, it is unclear whether *Garcia*'s requirement that a plaintiff establish animus or ill will in order to abrogate sovereign immunity survives in the wake of the Supreme Court's rulings in *Tennessee v. Lane*, 541 U.S. 509 (2004), and *United States v. Georgia*, 546 U.S. 151 (2006). *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 522 (E.D.N.Y. 2010) ("Since *Lane*, courts have disagreed on the conditions required to abrogate sovereign immunity under Title II."), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *Press v. State Univ. of N.Y.*, 388 F. Supp. 2d 127, 132 (E.D.N.Y. 2005) ("In the post-*Lane* era, Courts are divided as to whether the *Garcia* standard still applies to Title II cases against a state."). In *Lane*, the Supreme Court held that Title II validly abrogates a state's sovereign immunity as applied to cases implicating a plaintiff's fundamental right of access to the courts, 541 U.S. at 533–34, while in *Georgia*, the Supreme Court concluded that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually violates* the Fourteenth Amendment, Title II validly abrogates state sovereign immunity," 546 U.S. at 159.

Since those Supreme Court decisions, certain courts have maintained that the alleged Title II violation must have been motivated by discriminatory animus or ill will based on the plaintiff's disability. *See, e.g.*, *Elbert*, 751 F. Supp. 2d at 595 ("In order to state a violation of Title II . . . . [a] disabled plaintiff [must] allege that his or her mistreatment 'was motivated by either discriminatory animus or ill will due to disability.'" (quoting *Garcia*, 280 F.3d at 112)). Others have instead required that a plaintiff establish the violation of a fundamental right. *See McKnight*, 699 F. Supp. 2d at 522 (collecting cases); *Johnson v. S. Conn. State Univ.*, No. CIVA3:02–CV–2065(CFD), 2004 WL 2377225, at *4 (D. Conn. Sept. 30, 2004) ("[I]n the wake

7

of *Lane,* it appears that a private suit for money damages under Title II of the ADA may be maintained against a state only if the plaintiff can establish that the Title II violation involved a fundamental right."); *see also Roe v. Johnson,* 334 F. Supp. 2d 415, 421 n.9 (S.D.N.Y. 2004) ("Given the Supreme Court's decision in *Lane,* it would appear that there is no longer any basis to find the existence of a cause of action under Title II where no other fundamental right is implicated and the sole justification is the defendant's level of scienter." (citation omitted)). I need not delve into the details of this distinction because I find that Plaintiff has failed to establish abrogation under either test.

Plaintiff alleges that Defendants' actions have violated his due process rights, (*see* Pl.'s Opp'n 3–5); however, I find that Plaintiff has failed to establish any violation of those rights. "The loss of liberty entailed in the revocation of probation [or parole] is a serious deprivation requiring the probationer to be accorded due process." *Mace v. Amestoy*, 765 F. Supp. 847, 849 (D. Vt. 1991) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 480–81 (1972)); *see also United States v. Simmons*, 812 F.2d 561, 565 (9th Cir. 1987). Yet Plaintiff does not allege that his parole was ever revoked or even that Defendants ever threatened or attempted to revoke it. At most, Plaintiff alleges that on one occasion when officers visited his home unannounced and Plaintiff was slow to open the door because he could not hear the knock, the "officers informed him that he could have been arrested if he had not opened the door." (Compl. ¶ 20.) The comment by the officers did not itself violate Plaintiff's rights or lead to a violation of those rights: Plaintiff's parole was not subsequently revoked, nor was he subjected to a violation of parole proceeding. Thus, the two cases that Plaintiff cites in support of his due process argument—*United States v. Simmons*, 812 F.2d 561, and *Arce v. Louisiana*, No. CV 16-14003, 2017 WL 5619376 (E.D. La. Nov. 21,

8

2017)—are inapposite as both involved plaintiffs whose probation had in fact been revoked, thereby depriving them of their liberty. *See Simmons*, 812 F.2d at 563; *Arce*, 2017 WL 5619376, at *2.

Moreover, although Plaintiff asserts that Defendants violated his due process right to "fair warning of conduct that may result in revocation" of parole, (Pl.'s Opp'n 4 (quoting *Arce*, 2017 WL 5619376, at *17)), Plaintiff does not identify any specific parole conditions of which he was not informed or which he was unable to understand due to Defendants' failure to accommodate his disability. He vaguely alleges that "as a result of Defendants' failure to provide effective auxiliary aids and services, Plaintiff did not [understand] the details of his parole, the limitations on his behavior imposed by his parole, and the length of his parole." (Compl. ¶ 14.) However, these threadbare allegations are insufficient to plead a Fourteenth Amendment violation, particularly where there is no assertion that Defendants ever accused Plaintiff of breaching any of the conditions of his parole, and Plaintiff's parole apparently ended without incident. *See Iqbal*, 556 U.S. at 678 (explaining that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim under Fed. R. Civ. P. 12(b)(6)); *see also Allstate*, 916 F. Supp. 2d at 286 (noting that the standard for reviewing a 12(b)(1) motion to dismiss is "essentially identical to the 12(b)(6) standard").[5] In sum, because there is no indication that Defendants ever curtailed or threatened Plaintiff's liberty, and because Plaintiff did not identify any specific parole condition of which he was denied notice, I find that Defendants' alleged conduct could not have "actually violate[d]" Plaintiff's fundamental rights. *See Georgia*, 546 U.S. at 159.

---

[5] Plaintiff's conclusory reference to his inability to "understand and participate in the rehabilitation services offered by Defendants," (Compl. ¶ 15), is equally vague and unhelpful. Plaintiff does not articulate which specific rehabilitation services he was presented with, which services he claims to have been entitled to, and which aspects of those services he did not understand were available to him.

Applying the standard set forth in *Garcia*, *see* 280 F.3d at 111, Plaintiff has made no specific, non-conclusory allegations of discriminatory animus or ill will. He instead alleges that Defendants "knew or should have known" of his disability and his repeated requests for an interpreter but nevertheless failed to provide one. (Compl. ¶¶ 21–24.) *Garcia*, however, made clear that merely alleging knowledge of an ADA violation is insufficient to abrogate sovereign immunity: "Simply requiring a 'knowing' violation of Title II would still leave states subject to monetary liability for the full spectrum of conduct proscribed by the title even though, as we have already discussed, these proscriptions far exceed the authority afforded Congress under § 5." 280 F.3d at 112; *see also id.* (declining to allow monetary awards even "upon a showing of an intentional or willful violation of Title II").

Although Plaintiff broadly asserts that Defendants "intentionally discriminated against Plaintiff and acted with deliberate indifference to his federally protected rights," (Compl. ¶ 26), such vague, unsupported allegations are insufficient to establish the discriminatory animus necessary to abrogate Defendants' sovereign immunity, *cf. Elbert*, 751 F. Supp. 2d at 596 (dismissing ADA claim where plaintiff conclusorily alleged that "Defendant acted in a discriminatory manner in that [plaintiff] was excluded [from] participation in or denied the benefits of Defendant's services, programs, or activities"). Plaintiff's general and conclusory allegations fall far short of those present in cases in which animus or ill will has been established. *See Keitt v. New York City*, 882 F. Supp. 2d 412, 425, 455 (S.D.N.Y. 2011) (finding plaintiff sufficiently alleged discriminatory animus where he asserted that, on account of his dyslexia, he was threatened with false misbehavior reports for offenses he never committed and subjected to other disciplinary sanctions when he could not keep up with other students); *see also Smith v. Masterson*, No. 05 Civ. 2897(RWS), 2006 WL 2883009, at *4, 12 (S.D.N.Y. Sept. 29, 2006)

(concluding that Eleventh Amendment immunity did not apply where deaf inmate alleged, *inter alia*, that DOCS staff "denied [plaintiff's] request for replacement batteries [for his hearing aids], then subjected him to a surprise vicious attack, from behind, and confiscated his hearing aids" (internal quotation marks omitted)).

Finally, although Defendants seek dismissal of Plaintiff's ADA claims generally, neither Defendants nor Plaintiff distinguish between Plaintiff's claims for monetary relief versus his claims for injunctive and declaratory relief. The standards for Eleventh Amendment abrogation addressed above apply only to claims for money damages. *See Garcia*, 280 F.3d at 115 ("[A]ctions by private individuals for injunctive relief for state violations of Title II have not been foreclosed by today's decision." (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Georgia*, 546 U.S. at 160 (Stevens, J., concurring) (noting that defendants "correctly chose[] not to challenge the Eleventh Circuit's holding that Title II is constitutional insofar as it authorizes prospective injunctive relief against the State"). However, based upon the allegations in the Complaint, I conclude that Plaintiff's ADA claims for injunctive and declaratory relief must be dismissed as moot.

"A case is deemed moot where the problem sought to be remedied has ceased, and where there is 'no reasonable expectation that the wrong will be repeated.'" *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)). In his Complaint, which was filed on September 19, 2018, Plaintiff states that he was "placed on parole until October 26, 2017." (Compl. ¶ 1.) Therefore, by his own admission, Plaintiff is no longer on parole. Even assuming Plaintiff had been injured while he was on parole, I find that there is no reasonable expectation that Defendants will cause him further injury. *See Keitt*, 882 F. Supp. 2d at 426 (*sua sponte* dismissal of ADA and Rehabilitation Act claims for injunctive relief as

11

moot because plaintiff challenged conduct at facility where he was no longer incarcerated); *Pugh v. Goord*, 571 F. Supp. 2d 477, 489–90 (S.D.N.Y. 2008) (dismissing plaintiff's claims for injunctive and declaratory relief against DOCS on the ground that "[w]here a prisoner has been *released* from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot"); *see also Muhammad v. City of N.Y. Dep't of Corr.*, 126 F.3d 119, 123 (2d Cir. 1997) (concluding that because plaintiff had been released from prison, any injunctive relief "would afford no legally cognizable benefits to [plaintiff], who [wa]s no longer imprisoned within the [New York City Department of Corrections] system" (internal quotation marks omitted)).[6]

Accordingly, I conclude that Plaintiff's claims for monetary relief under the ADA are barred by the Eleventh Amendment, and Plaintiff's ADA claims for injunctive and declaratory relief are moot.

### 2. Rehabilitation Act Claims

Defendants seek the dismissal of Plaintiff's Rehabilitation Act claims against the State only, as Defendants concede that DOCCS has waived its Eleventh Amendment immunity under the Rehabilitation Act by accepting federal funding. (Defs.' Br. 4 n.3, 5.) Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "Program or activity," in turn, is defined as

> all of the operations of [] (A) a department, agency, special purpose district, or other

---

[6] Plaintiff's allegation that "[a]s a resident of Manhattan, [he] expects to have future encounters [with DOCCS], whether by choice or necessity," (Compl. ¶ 30), is insufficient to suggest that the injuries Defendants have allegedly caused him are likely to recur. *See Pugh*, 571 F. Supp. 2d at 490 ("[Plaintiff's] second argument—that he will likely end up in prison again, thus preserving his claim in the event of future incarceration—is meritless, speculative, and, on some level, highly insulting." (citing *Muhammad*, 126 F.3d at 124)).

*instrumentality of a State* or of a local government; or (B) the *entity of such State or local government* that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

*Id.* § 794(b)(1) (emphasis added). Defendants argue that because "program or activity" is defined by reference to an "instrumentality" or "entity" of a state government as opposed to a state itself, it is only the department or agency that provides the relevant services—here DOCCS[7]—that may be sued on the basis that it has accepted federal funds. I agree that the plain language of the statute precludes Plaintiff's Rehabilitation Act claims against the State. *See Koslow v. Pennsylvania*, 302 F.3d 161, 171 (3d Cir. 2002) ("[I]f the entire state government were subject to § 504 whenever one of its components received federal funds, subsection (b)(1)(B) would be redundant.").

Although the Second Circuit does not appear to have directly addressed the question of whether a state itself is a proper party to a Rehabilitation Act claim, other circuits have answered that question in the negative. Examining the definition set forth in § 504(b), the Eighth Circuit determined that "[u]nder this definition, the State itself as a whole is not a program or activity. Rather, . . . only the department or agency which receives or distributes the aid is covered." *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000) (internal quotation marks omitted); *see also Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1002–04 (D. Minn. 2016) ("[B]ecause the definition of a 'program or activity' covered under the Rehabilitation Act does not include a state itself, the state's waiver of sovereign immunity is limited to the state agency that accepts or distributes the federal funds."). Other circuits have reached the same conclusion. *See Koslow*, 302 F.3d at 171 (Third Circuit decision concluding that "if a state accepts federal funds for a

---

[7] Plaintiff acknowledges that DOCCS is the "department of the New York State Government responsible for the care, confinement, and rehabilitation of inmates." (Compl. ¶ 1.)

13

specific department or agency, it voluntarily waives sovereign immunity for Rehabilitation Act claims against the department or agency—but only against that department or agency"); *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991) (explaining that § 504 "was not . . . intended to sweep in the whole state or local government, so that if two little crannies (the personnel and medical departments) of one city agency (the fire department) discriminate, the entire city government is in jeopardy of losing its federal financial assistance"). Moreover, the Second Circuit appears to have recognized the narrow scope of the Rehabilitation Act, explaining that "Title II [of the ADA] applies to any state or local government or instrumentality of a state or local government," whereas "the focus of the Rehabilitation Act is narrower than the ADA's in that its provisions apply only to programs receiving federal financial assistance." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004).

The lone decision to the contrary that Plaintiff has identified is unpersuasive. In *Keitt v. New York City*, the district court permitted plaintiff's Rehabilitation Act claims to proceed against the State of New York itself, concluding that they were "not barred by the 11th Amendment because New York has waived sovereign immunity with respect to those claims." 882 F. Supp. 2d at 425, 457 (citing *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 414 (S.D.N.Y. 2006)). However, the *Keitt* court engaged in no analysis of the precise language of the statute. *See id.* Moreover, in *Degrafinreid v. Ricks*—the case on which the *Keitt* court relied—neither a state nor a local government itself was a defendant. Thus, the *Degrafinreid* court's conclusion that "New York's continued acceptance of federal funds on behalf of DOCS constitutes a waiver of sovereign immunity as to all of plaintiff's Rehabilitation Act claims," 417 F. Supp. 2d at 414, in no way indicates that the waiver of immunity extended beyond DOCS. In any event, I am more persuaded by the detailed analysis of the Third, Seventh, and Eighth Circuits, which is

14

consistent with and reinforced by the plain language of the statute. Accordingly, I find that although Plaintiff's Rehabilitation Act claim for money damages against DOCCS may proceed, (*see* Defs.' Br. 4 n.3 (conceding that this claim survives)),[8] his Rehabilitation Act claims against the State must be dismissed.

## V. Conclusion

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED. Plaintiff's ADA claims are DISMISSED, as are Plaintiff's Rehabilitation Act Claims against the State and Plaintiff's Rehabilitation Act claims for injunctive and declaratory relief against DOCCS. Plaintiff's NYSHRL and NYCHRL claims are also DISMISSED. Only Plaintiff's Rehabilitation Act claim for monetary damages against DOCCS survives.

The Clerk of Court is respectfully directed to terminate the motion pending at Document 16.

SO ORDERED.

Dated: September 30, 2019
      New York, New York

*Vernon S. Broderick*
Vernon S. Broderick
United States District Judge

---

[8] For the reasons set forth above, *see supra* Part IV.B.1, Plaintiff's Rehabilitation Act claims against DOCCS for injunctive and declaratory relief are dismissed *sua sponte* as moot. *See Keitt*, 882 F. Supp. 2d at 426 (*sua sponte* dismissal of ADA and Rehabilitation Act claims for injunctive relief as moot because plaintiff challenged conduct at facility where he was no longer incarcerated).